644 F.2d 467
 107 L.R.R.M. (BNA) 2554, 91 Lab.Cas. P 12,733
 Charles CHRISTOPHER and J. C. Luce, Plaintiffs-Appellees
Cross-Appellants,
v.
SAFEWAY STORES, INC., Defendant-Appellee,
Amalgamated Meat Cutters and Butcher Workmen of North
America, AFL-CIO, Local Union 540,
Defendant-Appellant Cross-Appellee.
 No. 79-3479.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 May 4, 1981.
 Mullinax, Wells, Mauzy & Babb, Edward B. Cloutman, III, Genice A. G. Rabe, Dallas, Tex., for defendant-appellant cross-appellee.
 Larry R. Daves, Tyler, Tex., for plaintiffs-appellees cross-appellants.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before BROWN, GEWIN and POLITZ, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Charles Christopher and J. C. Luce, members of Local 540 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, were employed as meat cutters by Safeway Stores, Inc., in the Tyler District in East Texas. Both worked in various stores within the District prior to their assignment to store number 508 in Tyler, Texas. A few months after their transfer that store was closed and a number of employees, including Christopher and Luce, were "laid off." Christopher and Luce protested to their union representative that their seniority shielded them from a lay-off. In response the union representative furnished a copy of the 1976-1978 collective bargaining agreement between the Union and Safeway, the contract then in effect, which provided for seniority on a "city-wide" basis. The agreements for 1974-1976 and 1978-1980 provided for application of seniority rights on a "district-wide" basis.
 
 
 2
 Under the district seniority system, employees could transfer from one city to another within the district and maintain seniority throughout the district. Under the city seniority system, one could maintain seniority only with an intra-city transfer. When store number 508 was closed, the minimal amount of employment time Christopher and Luce had within Tyler was insufficient to protect them from a reduction in force. Their period of employment within the district, however, was such that they would not have lost their jobs if seniority had been calculated on a district-wide basis. They would have been entitled to transfer to another store within the district.
 
 
 3
 Christopher and Luce filed suit against Safeway and the Union seeking reinstatement, lost wages, compensatory and punitive damages, a declaration of invalidity of the city seniority system, injunctive relief and attorney's fees. They alleged that Safeway breached the collective bargaining agreement by terminating their employment and that the Union violated its duty of fair representation by refusing to arbitrate their grievance against Safeway. Finding the lay-offs to be consistent with the provisions of the 1976-1978 contract, the district court found that Safeway had not breached the contract by the terminations and that the Union had not violated its duty of fair representation by declining to arbitrate the issue.
 
 
 4
 Christopher and Luce also alleged that the Union breached the duties it owed to union members as prescribed by the Labor-Management Reporting and Disclosure Act of 1959 (the Landrum-Griffin Act), 29 U.S.C. §§ 401 et seq., by failing to present to the membership a mandatory matter of union business. Under Section 2 of the constitution of Local 540, "all major propositions affecting the Local Union must be approved at a membership meeting called pursuant to appropriate, and informative written notice." The evidence establishes that the Union submitted the proposed 1976-1978 collective bargaining agreement for approval and presented the membership with a single sheet purporting to list the changes from the then extant 1974-1976 contract. This page of changes contained no reference to the seniority system. The court ruled as a matter of law that the failure to submit the proposed seniority system change to the membership violated 29 U.S.C. § 411(a)(1). The jury awarded damages for lost wages but declined to assess any other damages. The court awarded attorney's fees. The Union appealed the adverse judgment and Christopher and Luce appeal the directed verdict on the issue of fair representation. We affirm.
 
 Jurisdiction
 
 5
 Title 29 U.S.C. § 411 is entitled the Bill of Rights of Members of Labor Organizations. Section 411(a)(1) addresses the right of each member to participate equally in the union decision-making process in these words:
 
 
 6
 Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 7
 Section 412 vests jurisdiction in the district courts for any civil action involving infringement of the laborer's Bill of Rights.[1] The Union resists jurisdiction on two grounds: (1) section 411(a)(1) grants members "equal rights and privileges" (emphasis added) and absent some form of discrimination no jurisdiction lies, and (2) this section does not require proposed collective bargaining agreements to be submitted to the union membership. The Union contends that if all members are treated equally, and an opportunity to vote on a collective bargaining agreement is withheld from all alike, no violation of the statute results.
 
 
 8
 Our first inquiry is whether this contention is consistent with the purposes of the laborer's Bill of Rights viewed in light of the factual panoply before us. Section 2 of the constitution of Local 540 provides:
 
 
 9
 The local union executive board shall have full power and authority between meetings of this Local Union to perform all acts necessary for carrying out the business of the Local Union pursuant to this Constitution and the laws of the International Union, provided however, all major propositions affecting the Local Union must be approved at a membership meeting pursuant to appropriate and informative written notice. (Emphasis added.)
 
 
 10
 Approval of the membership is specifically required for "all major propositions." It cannot be gainsaid that "all major propositions" includes substantial changes in the collective bargaining agreement. Nor may it be seriously suggested that the basic format of the seniority system, inexorably intertwined with job security, is other than a substantial matter in such agreements. The statutory reference to the right "to vote in elections or referendums" encompasses a member's right to vote on the collective bargaining agreement when, as in this case, the union constitution recognizes and grants that right.[2] We conclude that § 411(a)(1) protects the rights of members to vote on collective bargaining agreements when the constitution, bylaws or articles of a union so provide.
 
 
 11
 Having reached the foregoing conclusion, we examine the Union's contention that if all members are equally denied the right to vote there is no statutory breach and, thus, no jurisdiction in the district court. Such an interpretation of § 411(a)(1) would permit either an employer or union officials to effect an absolute denial of the employees' right to vote. Section 411(a)(1) guarantees "(e)very member ... equal rights ... to vote ... and to participate." The statute requires that these rights be extended to all members on an equal basis. We decline the Union's invitation to read this statute to mean that a right created or protected by the statute may be abridged with abandon provided there is an even-handed denial to all.[3] We find neither logic nor the rudiments of justice in such an interpretation.
 
 
 12
 Our colleagues in the Sixth Circuit reached a similar conclusion in Trail v. International Broth. of Teamsters, Etc., 542 F.2d 961 (1976), holding that the word "referendum" in § 411(a)(1) is "sufficiently broad to guarantee to all union members a right to vote on a union contract which any of them enjoy." Id. at 966. No showing of discrimination in the grant of the election franchise was required.
 
 
 13
 We find the requisite jurisdiction and proceed to consideration of the issues raised on the merits.
 
 
 14
 Change in Contract Question of Law or Fact?
 
 
 15
 The Union asserts that the question whether there was a change in the seniority provisions in the two contracts is one of fact which should have been decided by the jury. The district judge, considering the question to be one of law to be determined by the court, held that there had been a meaningful change in the seniority provisions.
 
 
 16
 Absent a latent or patent ambiguity, the meaning of a contract is a matter of law to be decided by the court. Battig v. Hartford Acc. and Indem. Co., 608 F.2d 119 (5th Cir. 1979). Should an ambiguity exist, the intent of the parties is a question of fact to be decided by the jury. Freeman v. Continental Gin Company, 381 F.2d 459 (5th Cir. 1967). If resolution of the legal issue as to the meaning of a contract revolves on the determination of factual questions, as it frequently does, the trier of fact must first decide those questions. Thereafter the court proceeds with the interpretation of the contract. Cook Industries, Inc. v. Community Grain, Inc., 614 F.2d 978 (5th Cir.), cert. denied, --- U.S. ----, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).
 
 
 17
 The district judge found no ambiguity in the contracts at issue. The decision as to the existence of ambiguity vel non is a question of law for the court. Freeman, supra. We agree with the conclusion reached by the district judge; the contracts are not ambiguous and there are no factual disputes affecting the meaning of the contracts. Comparing the agreements for the biennial periods 1974-1976 and 1976-1978, the district judge concluded, as a matter of law, that a significant change had been made in the seniority system, i.e., seniority was changed from employment within the district and entitlement to jobs throughout the district, to seniority within the various cities in the district with job preference being limited to the city of employment.
 
 
 18
 The trial judge's conclusions are amply supported by the evidence. The 1974-1976 collective bargaining agreement covered 29 cities in Texas. Article 10 of that agreement provided for calculation of seniority on a district-wide basis with the district defined as the 29 listed cities.[4] The agreement for 1976-1978, covering 43 cities, contained a significant addition to Article 10, specifically Section 1(B). This addition provided that each of the 43 listed cities constitutes a separate seniority area.
 
 
 19
 We agree with the district judge that as a matter of law the 1976-1978 collective bargaining agreement was significantly different, as relates to seniority, from the agreement covering the years 1974-1976. The issue should have been presented to the membership for approval. The Union's failure to do so was an actionable breach of a duty owed the plaintiffs.
 
 Union's Duty of Fair Representation
 
 20
 The trial judge concluded that despite the violation of § 411(a)(1) by the abrogation of the members' voting rights, the Union had not breached its duty of fair representation. We reach the same conclusion. The duty of fair representation, implied from the Labor-Management Relations Act, 29 U.S.C. § 159(a), obligates a union to represent all workers within the collective bargaining unit in good faith, both in the negotiation of contracts and in the processing of grievances. Treatment of a member must not be arbitrary, discriminatory or in bad faith. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The rubric of fair representation, however, does not grant an employee the absolute right to have a grievance taken to arbitration without reference to the provisions of the collective bargaining agreement. Id. at 191, 87 S.Ct. at 917.
 
 
 21
 In the case before us the evidence reflects that Safeway correctly interpreted and applied the terms of the 1976-1978 collective bargaining agreement when it released Christopher and Luce. The Union was justified in refusing to press for arbitration of the complaint that the collective bargaining agreement had been violated. It had not been violated. The court's finding that the Union violated § 411(a)(1) is not coterminous with a finding that the Union violated its duty of fair representation. The two inquiries are separate, albeit frequently related. We find no error in the grant of the directed verdict in favor of the Union on this issue.
 
 Attorney's Fees
 
 22
 The court awarded attorney's fees against the Union on the basis of Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), a case based in part on § 411(a)(1). In Hall, the Supreme Court established the "common benefits" rationale for awarding fees when the plaintiff's successful litigation confers substantial benefit on members of an ascertainable class. No bad faith need be shown, and the trial court's exercise of its equitable power to award fees is not to be disturbed absent an abuse of discretion. The trial court found that a substantial service had been rendered to all members of Local 540. We are persuaded that the change in the 1978-1980 collective bargaining agreement, returning to district-wide seniority, was directly attributable to this litigation. We find no abuse of discretion in the trial court's determination to award fees.
 
 
 23
 Nor do we find error in the fact that the trial court did not specifically discuss all of the guidelines enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), in determining the amount of fees to be awarded. As we said in Davis v. Fletcher, 598 F.2d 469, 470 (5th Cir. 1979):
 
 
 24
 What we require is not a meaningless exercise in parroting and answering each of Johnson's twelve criteria, but some assurance that the court has arrived at a just compensation based upon appropriate standards. Some cases may arise in which all of the twelve criteria are relevant in fixing fees. See, e. g., Norwood v. Harrison, 581 F.2d 518 (5th Cir. 1978). However, it will not always be necessary for a district court to address each of the twelve factors in explaining the considerations affecting its decision.
 
 
 25
 The court did not ignore the Johnson guidelines. Reference is made to the time spent in preparation, the attorney's regular fee, the complex nature of the case, preclusion of other employment, and the attorney's professional reputation. We find these references, in the context of this case, to be modestly sufficient. Nor do we find error in or believe inappropriate the court's consideration of the contingent nature of the fee in assessing the amount. The contingency of payment is a valid criterion.
 
 
 26
 The judgment of the district court is in all respects AFFIRMED.
 
 
 
 [1]
 29 U.S.C. § 412:
 Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.
 
 
 [2]
 We need not decide, and therefore pretermit, the question whether § 411(a) (1) creates a right to vote on changes of substance in collective bargaining agreements when no express provision for such is contained in the constitution, bylaws or articles of a union
 
 
 [3]
 We are cited to Calhoun v. Harvey, 379 U.S. 134, 139, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), for the proposition that § 411(a)(1) is applicable only if discrimination is alleged. In Calhoun the union's constitution and bylaws placed reasonable restrictions on the rights of members to nominate candidates. The Court held this did not violate § 411(a)(1) because the restrictions were applied equally to all members. The section permits of reasonable rules and regulations
 
 
 [4]
 Section 10(e) of Article 10 provides: "For all employees covered by this Agreement, seniority shall prevail in lay-off rehiring on a Store-District-Contract basis." Section 10(f) provides: "In the event of a store closing, employees will be offered the opportunity to exercise their seniority within the District and retain their seniority." Therefore, under the 1974-1976 agreement, if a store closed, employees could exercise their seniority anywhere within the district