CUNNINGHAM AND COMPANY, INC.,
Plaintiff-Appellant,

v.

CONSOLIDATED REALTY MANAGEMENT, INC., et al.,
Defendants-Appellees.

No. 85–2842.

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1986.

Clyde A. Muchmore, Oklahoma City, Okl., Stephen Parten, San Antonio, Tex., for plaintiff-appellant.

Emerson Banack, Jr., San Antonio, Tex., for Consolidated Realty, et al.

Moulton S. Dowler, Jr., San Antonio, Tex., for Segal, et al.

Before THORNBERRY, JOHNSON, and JERRE S. WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

A limited partner, Cunningham and Company ("Cunningham"), sued the general partner, the other limited partners, and the buyers of partnership property for breach of partnership agreements, breach of fiduciary duty, and conspiracy. The jury found against Cunningham on all counts. The issues on appeal are: (1) whether the trial court was correct in leaving interpretation of the partnership agreements to the jury; (2) how two apparently conflicting clauses in those agreements should be interpreted; and (3) whether the jury heard substantial evidence to justify its finding that no breach of fiduciary duty or conspiracy occurred. We hold that, while the trial court should have interpreted the agreements, the jury's interpretation was correct and that sufficient evidence supported the jury's other findings. Accordingly, we affirm.

I. *BACKGROUND*

Cunningham and Company, headed by R.C. Cunningham, was a limited partner in

seven limited partnerships, the "Hare Partnerships," formed to invest in apartment buildings. Bruce Eells, one of the defendants, was general partner and also held a contract to manage the buildings.

Paragraph E of each of the partnership agreements provided that "a majority in interest of the partners" could vote to dissolve the partnership. Paragraph N of each agreement reproduced word-for-word section 10(a) of the Texas Uniform Limited Partnership Act (V.A.C.S. art. 6132a) (TULPA) on the powers of a general partner. It read:

[W]ithout the written consent or ratification of the specific act by all the limited partners the general partner shall have no authority to: ....

2. do any act which would make it impossible to carry on the business of the partnership; ....

4. ... assign the rights of the limited partners in specific partnership property for other than a partnership purpose; ....

Each agreement defined the "partnership purpose" as "construction, ownership, and operation" of its respective apartment complex.

In 1981, all of the partners, including Mr. Cunningham, agreed to seek a buyer for the buildings. They received no acceptable offer for two years. In 1983, Segal and Gerber, also defendants in this case, began negotiations to buy the complexes. At a June 16, 1983, meeting, to which Cunningham was invited but which he did not attend, the other partners accepted Segal and Gerber's revised offer. The participants in the meeting tried to inform Cunningham of the sale by telephone and certified mail, but did not succeed. On July 26, 1983, Eells, as general partner, signed the sales contract. Eells also signed a contract with the new owners to continue managing the buildings.

Cunningham objected to the sale and recruited two other potential buyers: the National Housing Partnership (NHP) and Security Pacific Bank. Both offered substantially higher prices. However, the defendants presented testimony to show that the NHP inquiry was a type that had only about a ten to fifteen percent chance of ripening into a firm offer, while the Security Pacific offer presented tax disadvantages and envisioned nonrecourse notes with payment beginning several years in the future. By contrast, the Segal/Gerber offer included a cash downpayment, a shorter payment period, and personal recourse against the buyers.

Cunningham sued his partners and the buyers for breach of the "Hare Partnership Agreements," breach of fiduciary duty, and conspiracy. The judge instructed the jury that they were required to resolve the apparent conflict between Paragraphs E and N of the partnership agreements before reaching a decision on the three charges:

If you find from a preponderance of the evidence that the Hare partnership agreements requires [sic] the consent of all the partners to sell the partnership property then you will find for the Plaintiff. If, on the other hand, you find that the partners were permitted by the partnership agreement to sell the partnership property without unanimous consent as a part of winding up, then your verdict on that issue will be for the Defendants.

Record Vol. 11 at 86–87. The jury found against Cunningham on all three counts. The district court, having denied Cunningham's motions for a directed verdict, judgment n.o.v., and a new trial, entered a take-nothing judgment in favor of the other partners and the buyers.

## II. *MERITS*

### A. *The Roles of Judge and Jury in Interpreting the Partnership Agreement*

The roles of judge and jury in the interpretation of contracts are set by federal law, even in diversity cases. *Ammons v. Franklin Life Insurance Co.*, 348 F.2d 414, 416 (5th Cir.1965). The general rule is that the interpretation of a writing, such as a contract, is a matter of law for the court. *Paragon Resources v. National Fuel Gas Distribution*, 695 F.2d 991, 995 (5th Cir. 1983); 3 A. Corbin on Contracts § 554 at 218–27 (1960).

However, if the *court* determines that the contract is ambiguous and that extrinsic evidence on such matters as the parties' intent, local usage, or course of dealing will help to resolve the ambiguity, the judge may submit those matters to the jury. *Paragon Resources*, 695 F.2d at 995; *Christopher v. Safeway Stores, Inc.*, 644 F.2d 467, 471 (5th Cir.1981); *Ammons*, 348 F.2d at 416. After the jury has resolved any factual questions, the court applies that finding in its interpretation. *Christopher*, 644 F.2d at 471.

■ In this case, neither party presented evidence on the negotiations that led to the disputed clauses, other dealings, or idiosyncratic usages. Both parties concede that there were no disputed factual issues that could have shed light on the contract. Indeed, it appears from the record that the parties lifted language from the statute without discussion. Hence, although the contract contains contradictory clauses, there was no extrinsic evidence for the jury to consider, and the court's charge points to none. The parties did make arguments based on the legislative history of the TULPA. Such statutory arguments can be considered to fill in gaps in contracts. *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex.1976). However, statutory interpretation is peculiarly within the province and expertise of the court. In short, the interpretation of this contract is a question of law. The district court erred in submitting it to the jury, and we must resolve it de novo.

### B. *Interpretation*

Paragraph E of the partnership agreement, allowing a majority of the partners to vote to terminate the partnership, apparently contradicts Paragraph N, requiring a unanimous vote before the general partner may "do any act which would make it impossible to carry on the business of the partnership." Cunningham argues that Paragraph N, as the more specific provision, should prevail over Paragraph E, as the more general one. However, on their face, both paragraphs are framed in general terms, and just as good a case could be made for labelling Paragraph E as the more specific one.

Another cardinal rule of contract interpretation requires that apparently contradictory clauses be construed so as to give effect to both. Cunningham proposes that the two clauses be read so that a unanimous vote is required whenever the general partner seeks to dispose of all partnership assets, even as part of a termination authorized by majority vote. Since no partnership can terminate without disposing of its assets, this interpretation would allow Paragraph N to swallow Paragraph E. A single partner could block termination indefinitely and thus lock the other partners into their investments.

The defendant partners advance a different reconciliation. They read Paragraph N to require a unanimous vote for any radical change in the business of an *ongoing* partnership. However, as soon as the partnership votes, by a majority, to terminate, that vote implies the power to take all necessary steps, including the sale of assets, to carry out the termination. The other partners point out that the unanimity requirement of Paragraph N is needed to protect a minority partner from a change in his investment while his money remains committed to the partnership. It is not necessary in a dissolution, when every partner receives his share back.

The other partners' interpretation is supported by the history of the TULPA. A Texas Attorney General's Opinion in 1978 read section 10 of that Act as requiring that all partners unanimously agree to terminate a Limited Partnership. Op.Atty. Gen. (Tex.) H–1229 (Aug. 16, 1978). The corporate bar protested, and the Attorney General reversed himself in Op.Atty.Gen. (Tex.) H–1321 (Dec. 29, 1978). Section 10 of the TULPA was amended in 1979 to add:

(b) This section does not prevent:
    (1) The dissolution and winding up of the partnership: ...
    (ii) Upon approval by any majority of the limited partners ... as provided in the certificate; ...

V.A.C.S. art. 6132a (1986 Supp.). The bar committee commented that this subsection

"clarifies rather than changes prior law." *Id.*

■ Of course, the statute merely authorizes the partnership certificate to allow termination by a majority vote, and does not settle the question of whether the Hare Partnership certificates actually did so. However, the contradiction on the face of the statute is so similar to the contradiction on the face of the partnership agreements that an interpretation reconciling the first is persuasive as to the second.

■ Moreover, the defendant partners' reading is more consistent with the general purpose of the 1979 amendments. The Texas Legislature modified sections 8 and 10 of the TULPA in order to bring these sections in line with the "partnership democracy" requirements of the Texas Securities Laws. V.A.C.S. art. 6132a, §§ 8 and 10(b), Comment of Bar Comm. (1986 Supp.); Bromberg, Bateman, Hamilton, Lebowitz & Winship, *Unanimity in Limited Partnerships No Longer Required by Attorney General,* 16 Bull. Section on Corp., Banking & Bus. L. 3 (March 1979). The revisions made it clear that partnership agreements could deprive minority partners of their veto on certain decisions. In return, minority partners received safeguards under the partnership and securities statutes. Cunningham's interpretation upsets this balance and allows a minority to hold the majority hostage. The majority's right to vote for dissolution becomes useless if the minority can block the sale of assets that forms a necessary part of dissolution.

### C. *Conspiracy and Breach of Fiduciary Duty*

Even if the other partners did not breach the partnership agreement, they may have violated the fiduciary duty that partners owe to one another. *Gum v. Schaefer,* 683 S.W.2d 803, 805 (Tex.App.—Corpus Christi [13th Dist.] 1984), *no writ; Maykus v. First City Realty & Financial Corp.,* 518 S.W.2d 887, 892 (Tex.Civ.App.—Dallas, 1974), *no writ.*

Cunningham attempted to prove several violations at trial: (1) that the price for which the partnership property was sold was grossly inadequate; (2) that general partner Eells engaged in prohibited self-dealing when he signed a contract to manage the properties after the sale; and (3) that the general partner invented a termination of the partnership to validate his sale of the properties after the sales contract was signed. As to (1), the jury heard evidence that the Segal/Gerber offer was negotiated at arms length and represented fair market value, as well as evidence that the NHP and Security Pacific offers were less desirable. On (2), the jury heard evidence that Eells received his management contract several months after the property sale was agreed upon, that the Segal/Gerber partnerships bargained for stringent terms, and that they in fact terminated the contract within eight months. Cunningham's contention number (3) was disproved by his own admission that *all* the partners had agreed to seek a buyer for the properties as early as 1981, and the undisputed fact that a *majority* of the partners had authorized this particular sale at a July 16, 1983, meeting, before the sales contract was signed. If the partnership agreement allowed a majority of the partners to authorize the sale on July 16, then the general partner needed no subterfuge to sign the sales contract on July 26.

■ The jury resolved each of these fact issues against Cunningham. Its verdict is reasonable, supported by substantial evidence and should not be overturned. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

Cunningham's conspiracy complaint fails if the sale of partnership property breached neither a contractual nor fiduciary duty.

### III. *CONCLUSION*

The reconciliation of the apparently conflicting clauses in the partnership contract was a matter of law for the court and should not have been submitted to the jury. However, the interpretation advanced by the defendant partners and apparently adopted by the jury is the one most naturally based on the contract language, best balancing majority and minority interests, and most congruent with the legislative

history of the Texas Uniform Limited Partnership Act. According to this interpretation, a unanimous vote of partners is required to sell all or almost all of the partnership assets if the partnership is to continue, but not if the sale is part of a dissolution. We hold that this interpretation is correct and that Cunningham's breach of contract claim fails. Moreover, the jury had substantial evidence to reject the breach of fiduciary duty and conspiracy claims.

AFFIRMED.