**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LOVE PONTIAC, CADILLAC, BUICK,
GMC TRUCK, INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.

GENERAL MOTORS CORPORATION;
GMC TRUCK DIVISION, a division of
General Motors Corporation,
<u>Defendants-Appellees.</u>

No. 97-2490

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Dennis W. Shedd, District Judge.
(CA-95-2161-9-19)

Argued: December 3, 1998

Decided: March 10, 1999

Before NIEMEYER and KING, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Philip Benjamin Zuckerman, LEWIS, BABCOCK &
HAWKINS, L.L.P., Columbia, South Carolina, for Appellant. J. Rob-
ert Robertson, KIRKLAND & ELLIS, Chicago, Illinois, for Appel-

lees. **ON BRIEF:** Geoffrey M. Davis, KIRKLAND & ELLIS, Chicago, Illinois, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff Love Pontiac, Cadillac, Buick and GMC Truck, Inc. ("Love") brought suit against General Motors Corporation and the GMC Truck Division of General Motors Corporation, alleging breach of contract, fraud and violation of Title 56, Chapter 15 of South Carolina law, "Regulation of Manufacturers, Distributors and Dealers." The District Court adopted the recommendation of the Magistrate Judge and granted summary judgment for defendants. The Magistrate Judge reasoned that GM's actions were not in violation either of the contract, which granted GM sole discretion to take such actions, or of the South Carolina statute prohibiting arbitrary, bad faith, or unconscionable actions. Love appeals the district court's disposition of the breach of contract and statutory claims only.* For the reasons discussed below, we affirm.

I.

Plaintiff operated a General Motors dealership in Burton, Beaufort County, South Carolina. In 1989, Love purchased the dealership and entered into contracts with several GM Divisions, including a contract as a provider of sales and service for GMC Trucks. The contract with

_____

*Appellant's brief raised an additional issue on appeal: whether the Magistrate Judge properly granted defendants' motion for a protective order barring the deposition of John G. Smale, a chairman of General Motors. Because the plaintiff failed to seek review of that order at the district court level, we decline to reach the question on appeal.

2

GMC Trucks was for a five-year period and included attached notices that the Love dealership's "Area of Primary Responsibility" ("APR") would be Beaufort and Jasper counties, including Hilton Head Island.

Several provisions of the contract with GMC Truck are particularly relevant to our analysis of plaintiff's claims. The stated "Purpose of the Agreement" is "to promote a relationship" between GMC Truck Division and Love as an authorized dealer. The Agreement mentions "mechanisms" by which dealers can provide input to GMC Truck Division's decision-making process, but specifically preserves the Division's "right to revise Dealer's Area of Primary Responsibility at Division's sole discretion consistent with dealer network planning objectives." Dealer Network Planning is described as distribution through a network of dealers that is "appropriate in number" so that each dealer is permitted "the opportunity to achieve a reasonable return on investment if it fulfills its obligations." The Agreement provides further that GMC Truck "reserves the right to appoint additional dealers" taking into consideration dealer network planning considerations. The only assurance to dealers with regard to Division's decisions to appoint new dealers is that Love would be advised in writing and given thirty days to present information before a final decision. However, the Agreement explicitly leaves that final decision solely to GMC Truck "pursuant to its business judgment."

In March 1993, Love proposed establishing a satellite dealership on Hilton Head Island. Also in March 1993, an agent of GMC Truck advised Love that the division wanted to add a Hilton Head dealer. However, GMC Truck turned down the proposed Love satellite on Hilton Head in June 1993, citing two reasons: (1) corporate directives as to the proper combination of GM products to be offered at a single dealership, and (2) Love's ineffectiveness in selling GMC Trucks at its Beaufort facility. Love received notice in June 1993 that its APR for GMC Trucks would be altered to exclude Hilton Head. Around that time, GMC Truck notified Love that it had decided to appoint a dealer other than Love to sell GMC Trucks on Hilton Head, again in keeping with corporate directives and anticipated sales. The dealer selected for the Hilton Head GMC Truck franchise was Heritage Motors ("Heritage"), an established dealership on Hilton Head which sold several GM lines (Pontiac, Buick, and Oldsmobile) as well as BMW products. Final approval of Heritage as the Hilton Head dealer

3

for GMC Truck was granted in January 1994 with the conclusion of a formal, written agreement.

II.

Plaintiff claims that defendants breached the terms of its contract by appointing an additional dealer in Love's APR and reducing its APR without adequate consideration of Love's interests. Interpreting a contract in general is a matter of law for the court. See Cunningham & Co. v. Consolidated Realty Mgt., 803 F.2d 840, 842 (5th Cir. 1986); see also Bourne v. Walt Disney Co., 68 F.3d 621, 629 (2nd Cir. 1995) (contract is ambiguous and presents jury question only if the "language used is susceptible to differing interpretations, each of which may be as reasonable as another").

The court below correctly found that the contract was not ambiguous and that plaintiff presented no question for a jury. The clear purpose of the contract was to grant plaintiff the authority to act as defendants' representative at the Burton/Beaufort location in selling and servicing GMC trucks. Contractual provisions regarding dealer input to GMC Truck and notice from GMC Truck to dealers are most properly understood as measures designed to reassure the dealer. Plaintiff's argument that such provisions diminish the discretion of defendants in making such decisions founders on the language of the contract which clearly preserves to defendants the "right to revise Dealer's Area of Primary Responsibility at Division's sole discretion consistent with dealer network planning objectives." Further, the contract clearly leaves the final decisions in this matter to GMC Truck "pursuant to its business judgment." These measures cannot, consistent with language of the contract as a whole, be considered as conditions precedent to actions left solely to the discretion of defendant GMC Truck. As noted, the evidence clearly discloses the steps were taken in the exercise of "its [defendant GMC Truck's] business judgment."

The terms of the contract leave no ambiguities as to defendants' discretion to establish additional dealerships and alter a dealer's APR. While the contract provides that such decisions should be made only after analyzing network planning considerations, those considerations include many factors in addition to plaintiff's best interests. The con-

4

tract provides that notice and opportunity be given plaintiff, but the final decision is left solely in GMC Truck's discretion, "pursuant to its business judgment." Defendants provided sound business judgment reasons for both the decision to award the Hilton Head franchise to Heritage rather than Love and the decision to diminish Love's APR. While it may have been clear before the notice period had expired that GMC Truck would probably not select Love as the Hilton Head dealer, adequate notice was given before the final decision to grant the dealership to another dealer was made.

Other courts have construed clauses very similar or even identical to the ones at issue here in a manner favorable to defendants. See Clair Int'l., Inc. v. Mercedes-Benz of N. America , 124 F.3d 314, 317 (1st Cir. 1997) (affirming dismissal of suit by dealer claiming new dealership was improperly awarded to third party by construing contract provision that final decision to establish additional dealers was to be made solely by manufacturer pursuant to its own business judgment without dealer's consent, notwithstanding other clauses in contract); Hubbard Chevrolet Co. v. Gen'l Motors Corp., 873 F.2d 873, 874 (5th Cir. 1989) (affirming summary judgment for defendant because exercise of sole discretion granted by contract cannot constitute breach when GM cited reasons for its decision); Olympic Chevrolet, Inc. v. Gen'l Motors Corp., 959 F.Supp. 918, 923 (N.D.Ill. 1997) (although contract states that its purpose is to permit dealers fully to realize opportunities for business success, that language does not render ambiguous, or contradict, other provisions in the contract leaving decisions solely to GM).

III.

Plaintiff also claims defendants violated Title 56 of the Code of Laws of South Carolina which governs motor vehicles. Chapter 15 of that Title, captioned "Regulation of Manufacturers, Distributors and Dealers," declares that unfair methods of competition and unfair or deceptive acts or practices are unlawful. See S.C. Code Ann. § 56-15-30 (1997). Specifically, it is a violation of § 56-15-30 for any manufacturer "to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties," including dealers. S.C. Code Ann. § 56-15-40(1).

5

The statute does not define the terms "arbitrary," "bad faith," or "unconscionable," but South Carolina courts have given them their usual legal meanings. Arbitrary conduct consists of "acts which are unreasonable, capricious or nonrational; not done according to reason or judgment, depending on will alone." Taylor v. Nix, 416 S.E.2d 619, 621 (S.C. 1992). Bad faith is defined as the opposite of good faith, which is "honesty in fact and the observation of reasonable commercial standards of fair dealing in trade." Schott Motorcycle Supply v. American Honda Motor Co., 976 F.2d 58 (1st Cir. 1992) (defining terms using ordinary meaning because they were not specifically defined in statute). Good faith exists and bad faith is absent when an entity exercises reasonable business judgment. See Richland Wholesale Liquors v. Glenmore Distilleries Co., 818 F.2d 312, 316 (4th Cir. 1987) (construing South Carolina statute outlawing unfair trade practices). Unconscionable is defined as "shockingly unfair or unjust." Schott, 976 F.2d at 63.

Defendants' actions were not in bad faith because they were based on a reasonable exercise of business judgment. GM had conducted market studies and other analyses before determining finally that a dealership should be added at Hilton Head. The determination that Heritage rather than Love should be awarded that dealership was based on corporate policy and the poor performance of Love's existing dealership in representing GMC Truck. The court below correctly accepted the proffered business judgment rationale for the decision.

For the same reasons, defendants' actions cannot reasonably be deemed arbitrary or unconscionable. By definition, an action which is based on a legitimate business rationale is not an arbitrary action. And awarding a new franchise to one existing GM dealer rather than another existing GM dealer cannot be called shockingly unjust or unfair because inevitably one of the two had to be chosen over the other.

IV.

Based on the foregoing reasons and analysis, the district court's order granting summary judgment to defendants is

AFFIRMED.