**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1240**

EDWIN A. SHERIDAN, Executor of Estate of Michael Kirkland
Casey,

                   Plaintiff – Appellant,

          v.

NATIONWIDE RETIREMENT SOLUTIONS, INCORPORATED,

                   Defendant – Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:07-cv-00286-CMH-TRJ)

Argued:  January 27, 2009          Decided:  February 25, 2009

Before NIEMEYER, TRAXLER, and SHEDD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Brien Anthony Roche, JOHNSON & ROCHE, McLean, Virginia,
for Appellant.   Christopher Landau, KIRKLAND & ELLIS, L.L.P.,
Washington, D.C., for Appellee.  **ON BRIEF:** Daniel T. Donovan,
Joseph Cascio, KIRKLAND & ELLIS, L.L.P., Washington, D.C., for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Edwin Sheridan, as the executor of the Estate of Michael Kirkland Casey, brought this breach of contract action against Nationwide Retirement Solutions, Inc. On cross-motions for summary judgment, the parties argued that the underlying contract is unambiguous, the material facts are not in dispute, and the case could be decided in their respective favor on summary judgment. J.A. 440. In this posture, the district court granted Nationwide's motion and denied Sheridan's motion. Sheridan now appeals. On appeal, the parties continue to assert that the contract is unambiguous and the facts are not in dispute, but they nonetheless vigorously disagree over the meaning of the underlying contract. Because we find that the contract is ambiguous, we vacate the summary judgment in favor of Nationwide and remand for further proceedings.[1]

I

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[1] We note that (1) the district court also ruled on other claims below and (2) Sheridan also appeals from an order denying his motion to set aside the summary judgment. However, the other claims are not before us on appeal, and our analysis of Sheridan's appeal of the order denying his motion to set aside the summary judgment is substantially the same as our analysis of his appeal of the summary judgment.

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). We review the district court's order granting summary judgment de novo. Jennings v. U.N.C., 482 F.3d 686, 694 (4th Cir.) (en banc), cert. denied, 128 S. Ct. 247 (2007). In doing so, we generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 127 S. Ct. 1769, 1774 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Id. at 1776 (quoting Fed. R. Civ. P. 56(c)).

As noted, both parties moved for summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th

3

Cir. 2003) (citations and quotation marks omitted).  The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment, nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another."  Continental Air., Inc. v. United Air., Inc., 277 F.3d 499, 511 n.7 (4th Cir. 2002) (citations and quotation marks omitted).

We have noted that "[a] court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation."  Washington Metro. Area Transit Auth. v. Potomac Invest. Props., Inc., 476 F.3d 231, 235 (4th Cir. 2007) (quoting Goodman v. R.T.C., 7 F.3d 1123, 1126 (4th Cir. 1993)).  Elaborating on this point, we explained:

> Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations.  The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face.  If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis.  If, however, resort to extrinsic evidence in

4

> the summary judgment materials leaves genuine issues
> of fact respecting the contract's proper
> interpretation, summary judgment must of course be
> refused and interpretation left to the trier of fact.

Id. (quoting Goodman, 7 F.3d at 1126). In short, summary judgment is only appropriate "when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." Id.[2]


## II

The underlying material facts, which are not disputed by the parties, tend to establish that in October 1981, the City of Chicago, Illinois, appointed Nationwide's predecessor[3] as the exclusive coordinator, administrator, and marketer of the City's deferred compensation plan. Under this plan, participants contribute a portion of their compensation in the form of deferrals or premiums to the plan, which are invested in life insurance products, annuity products, and/or mutual funds.

---

[2]This is a diversity case, and the parties agree that the contract is governed by Oklahoma substantive law. However, "[t]he roles of judge and jury in the interpretation of contracts are set by federal law, even in diversity cases." Cunningham and Co. v. Consolidated Realty Mgt., Inc., 803 F.2d 840, 842 (5th Cir. 1986); see also General Acc. Fire & Life Assur. Corp., Ltd. v. Akzona Inc., 622 F.2d 90, 93-94 n.5 (4th Cir. 1980) (discussing the interplay between state substantive law and Rule 56 in a diversity contract case).

[3]For ease of reference, we will refer to Nationwide's predecessor as "Nationwide."

5

Because Casey was instrumental in helping secure the contract with the City, Nationwide entered into an Agent Agreement with him in February 1982. The "Whereas" clause of the Agent Agreement provides:

> WHEREAS, the parties hereto recognize that certain previous oral Agreements and written Memoranda of Agreement between the parties have occurred concerning the employment of [Casey] and [his] compensation with regard to contracts obtained or to be obtained for [Nationwide] from the City of Chicago and the parties hereto wish and desire to collect all said Agreements aforesaid into one final Agreement for [Casey's] compensation.

J.A. 60. Generally, under the terms of the Agent Agreement, Casey was to act as a liaison between Nationwide and the City, and he was to be paid compensation in the form of commissions calculated as a percentage of the premiums Nationwide collected from plan participants, either initially or for renewal, under the 1981 agreement. Among other things, the Agent Agreement provides that "[r]enewal commissions on any given policy shall be fully vested to [Casey] upon acceptance" by the underwriters and that he "shall be fully vested for any renegotiation of" the 1981 agreement. J.A. 62-63. Further, the Agent Agreement contains a "Death and Disability" provision that states: "Commissions shall be deemed to have been earned [by Casey] on any executed Agreement with City or any other entity referred to herein and shall be continued to be payable to [Casey's] Estate

6

as provided herein in the event of his death." J.A. 64. Casey died in February 2000.

In March 1989, Nationwide and the City entered into the 1989 Administrative Services Agreement ("1989 ASA"), under which Nationwide was the exclusive coordinator, administrator, and marketer of the City's deferred compensation plan. The 1989 ASA was originally set to expire automatically in March 1994. Thereafter, Nationwide and the City executed nine amendments to the 1989 ASA. Several of these amendments predate Casey's death, including one that set the expiration date of the 1989 ASA for March 2003. An amendment after Casey's death extended the 1989 ASA expiration date beyond March 2003.

After Casey's death, Nationwide continued to pay commissions to his estate. However, in a December 2002 letter, Nationwide notified Sheridan that it was exercising its right to terminate the Agent Agreement. In January 2003, Nationwide informed Sheridan that the Agent Agreement had terminated by operation of law on Casey's death and, therefore, it would not make any further payments to the estate after March 2003.

III

The gist of this case is whether Nationwide is obligated by the Agent Agreement to pay commissions to Casey's estate after March 2003. Purporting to rely on basic principles of contract

7

interpretation, the parties have presented conflicting arguments as to what they contend is the plain, and only, reading of the Agent Agreement on this point.

Generally speaking, Nationwide argues that it is not obligated to continue paying commissions to Casey because, in its view, the Agent Agreement is a "personal services contract" and, after Casey's death, "by definition he was unable to perform any further services, so by definition he could earn no further commissions." Brief of Appellee, at 11. For support, Nationwide points to the "Death and Disability" provision of the Agent Agreement, arguing that under its plain terms "Casey is deemed to have 'earned' commissions for services performed on contracts 'executed' before his death, but not on contracts 'executed' after his death." Id. (emphasis in original). Accepting Nationwide's argument, the district court concluded:

> The plain meaning of the Agent Agreement clearly shows that Casey's estate was entitled to receive only commission payments for commissions Casey already earned, not to commissions that Casey could not earn after his death. [Nationwide], therefore, properly ended its commission payments to Casey's estate on March 29, 2003 - the date when the executed agreement in place when Casey passed terminated.

J.A. 446-47.

Sheridan generally contends that the court erred in making this determination and that Nationwide is obligated under the Agent Agreement to pay commissions to Casey's estate for as long

8

as Nationwide has any executed agreement with the City to administer a deferred compensation plan. In essence, Sheridan argues that the payments to Casey are not, as Nationwide contends, simply for the retention of his personal services; instead, they are also in recognition of his significant contribution to Nationwide in obtaining the 1981 agreement with the City. Like Nationwide, Sheridan points to the "Death and Disability" provision of the Agent Agreement, and he notes that its language states that Casey's commissions shall be deemed to have been earned and payable on "any executed Agreement" between Nationwide and the City. J.A. 64. In Sheridan's view, Nationwide's argument requires the "Death and Disability" provision to be read as if it states that Casey's commissions shall be deemed to have been earned and payable on "any executed Agreement in effect on the date of Casey's death." See Brief of Appellant, at 23.

As we have noted, the first step for a court presented with a summary judgment motion based on a contract's interpretation is to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face, and a contract is ambiguous if it is susceptible to two reasonable interpretations. We have carefully considered the parties' competing interpretations of the Agent Agreement, as set forth in their briefs and their oral arguments, and we conclude that

9

it is ambiguous with respect to the issue of Nationwide's obligation to pay commissions to Casey's estate after 2003. The parties have presented two seemingly reasonable interpretations of the Agent Agreement, and we are not persuaded that either interpretation is compelled as a matter of law by the language of the Agent Agreement read as a whole. Accordingly, the district court erred in entering summary judgment in favor of Nationwide.

We note that Sheridan has presented extrinsic evidence (especially the affidavit of Jay Wilkinson)[4] that supports his interpretation of the Agent Agreement. However, because the parties' litigation positions have been that the Agent Agreement is unambiguous, we decline to decide in the first instance if the ambiguity in the contract can be definitively resolved by extrinsic evidence and, consequently, whether either party is entitled to summary judgment. Bearing in mind our determination that the Agent Agreement itself is ambiguous, the district court is free on remand to conduct any further proceedings that it deems appropriate, including further consideration of summary judgment for either party. See, e.g., Atalla v. Abdul-Baki, 976 F.2d 189, 195 (4th Cir. 1992) ("Because the parties assert conflicting intentions on the basis of the same language, which

---

[4]Jay Wilkinson, as Nationwide's president, negotiated and signed the Agent Agreement on Nationwide's behalf.

10

supports both interpretations, it is our opinion that the contract is ambiguous and that the question of intent raises a genuine issue of material fact, rendering summary judgment inappropriate. Accordingly, the entry of judgment for Atalla is reversed, and the case is remanded to the district court for consideration of additional evidence of intent, if necessary, and a factual determination as to the actual intent of the parties.").

IV

Based on the foregoing, we vacate the summary judgment in favor of Nationwide and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

11