Ron COLSON and Donald Gene
Smith, Plaintiffs,

v.

ALLIED SYSTEMS, LTD., and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

Donald Gene SMITH, Kenneth Dudley,
and Daniel Jennings, Plaintiffs,

v.

AUTO CONVOY CO. and Teamsters, Chauffeurs, Helpers and Taxi Cab Drivers, Local No. 327, Defendants.

Nos. 3–89–0141, 3–89–0760.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 23, 1994.

William Joseph Marett, Jr., Bryan & Marett, Nashville, TN, Barbara Harvey, Detroit, MI, for Donald Gene Smith, Kenneth Dudley and Daniel Jennings.

Waverly David Crenshaw, Jr., Michael Etheridge Moore, Waller, Lansden, Dortch & Davis, Nashville, TN, Alexander E. Wilson, III, Forrest W. Hunter, Charles H. Morgan, W. Glenn Viers, Alston & Bird, Atlanta, GA, for Auto Convoy Co.

Cecil D Branstetter, James Gerard Stranch, III, Branstetter, Kilgore, Stranch & Jennings, Nashville, TN, Gary Witlen, Kurt C. Kobelt, Washington, DC, G. William Baab, Irving, TX, for Local 327 Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers.

## MEMORANDUM OPINION

ECHOLS, District Judge.

Presently pending before this Court are the following Motions: (1) the Plaintiffs' Motion for Summary Judgment; (2) Defendant Auto Convoy Co.'s and Defendant Allied Systems, Ltd.'s Motion for Summary Judgment; (3) Defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America's Motion for Summary Judgment; (4) Defendant Teamsters, Chauffeurs, Helpers and Taxi Cab Drivers, Local No. 327's Motion for Summary Judgment; and (5) Plaintiffs' Motion for an Order Permitting the Filing of Depositions and Answers to Interrogatories. Each party has

responded in opposition to every other party's cross-motions for summary judgment. For the reasons more fully outlined herein, Defendant Auto Convoy Co.'s Motion for Summary Judgment is hereby DENIED, Defendant Allied Systems, Ltd.'s Motion for Summary Judgment is hereby GRANTED in part, and DENIED in part, Defendants Local No. 327 and International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America's Motions for Summary Judgment are hereby DENIED, and Plaintiffs' Motion for Summary Judgment and for permission to file Depositions and Answers to Interrogatories are hereby DENIED.

This consolidated action combines two legally similar, but factually different claims which were brought by individual Plaintiffs against numerous separate, although related Defendants. In order to alleviate the inherent confusion which attends such a consolidation, this Court will address each presently outstanding Motion in the context of the specific case to which it pertains.

## I. *Smith v. Auto Convoy*, No. 3–89–0141

On February 15, 1989, the Plaintiffs in this action, Donald Smith, Kenneth Dudley, and Daniel Jennings, filed a Complaint against Defendants Auto Convoy Co. ("Auto Convoy") and Local 327 alleging violations against both Defendants of Section 101 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a) ("LMRDA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). This dispute arose out of the July 11, 1988 implementation of a rider to a collective bargaining agreement, known as the National Master Automobile Transporters Agreement ("NMATA"), which was entered into between Auto Convoy, Local 327, and various other local unions and employers. In this action, the Plaintiffs primarily allege that Auto Convoy and Local 327 violated the above-referenced statutes by agreeing to a new rider the effect of which was to lower the Plaintiffs' wage rates and terminate the Plaintiffs' rights to bid equipment annually on a company-wide basis, all without giving the Plaintiffs and other Auto Convoy employees the right to ratify these decisions by a vote. The Plaintiffs contend that their right to ratify the decision to accept the modified rider is protected by the International Union's Constitution, and Local 327's Bylaws.

By a previously entered Order, this Court granted Auto Convoy's Motion for Summary Judgment dismissal of the Plaintiffs' claim under the LMRDA. As such, three claims remain in this action, all of which are the subject of the parties' Cross–Motions for Summary Judgment: (1) the Plaintiffs' claim against Auto Convoy under the LMRA; (2) the Plaintiffs' claim against Local 327 under the LMRA; and (3) the Plaintiffs' claim against Local 327 under the LMRDA. This Court will now proceed to address each of these claims, as well as each parties' respective arguments pertaining thereto.

### A. The *Smith* Plaintiffs' Claims against Auto Convoy and Local 327 under the LMRA

The *Smith* Plaintiffs have sued both Auto Convoy and Local 327 under § 301 of the LMRA which provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The *Smith* Plaintiffs contend that Auto Convoy, as the employer, violated § 185 since its decision to approve and implement the rider without employee ratification constituted a breach of the parties collective bargaining agreement, the NMATA. In essence, the Plaintiffs argue that certain provisions of the NMATA protected their ratification rights, and that Auto Convoy, by implementing the rider without ratification, breached the parties' agreement, thereby violating 29 U.S.C. § 185. In addition, the *Smith* Plaintiffs contend that provisions of the International Union's Constitution, as well as the bylaws of Local 327, require union ratification of contract modifi-

cations like the 1988 rider. As such, the *Smith* Plaintiffs contend that Local 327, as their bargaining representative, breached the provisions of the International Union's Constitution and its own Bylaws by approving Auto Convoy's implementation of the 1988 rider without insisting upon membership ratification.

In its Motion for Summary Judgment, Auto Convoy denies that it violated § 185 or breached the parties' collective bargaining agreement. In addition, Auto Convoy argues that it was legally entitled to rely upon Local 327's apparent authority to agree to and implement the 1988 rider without membership ratification.

In its Motion for Summary Judgment, Local 327 contends that, in order to have breached its duty of fair representation under § 185 of the LMRA, its conduct must have been arbitrary, capricious or in bad faith. Local 327 argues that, since the record is devoid of any evidence that its conduct met this admittedly high standard, its Motion for Summary Judgment dismissal of the Plaintiffs' LMRA claim should be granted.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley,* 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

In order to establish a claim under the LMRA, 29 U.S.C. § 185, a plaintiff must demonstrate either the employer's or the union's breach of the parties' collective bargaining agreement, or the union's breach of a provision in its constitution or bylaws. In this case, the *Smith* Plaintiffs contend that their interpretations of the International Union's Constitution, Local 327's Bylaws, and the provisions of the NMATA compel the conclusion that mid-term contract modifications, like the 1988 rider, must be submitted to membership ratification before acceptance and implementation. In response, Local 327 contends that, when properly interpreted, neither the International Union's Constitution nor its Bylaws requires membership ratification. In addition, Local 327 contends that, even if this Court should find that it breached provisions of any of the applicable agreements, its conduct was not arbitrary, capricious, or in bad faith, and that it accordingly cannot be held liable for breaching its duty of fair representation. Finally, Auto Convoy contends that the proper interpretation of the NMATA's various provisions likewise supports its contention that no such ratification vote was required. Both parties have submitted extensive evidentiary materials in support of their respective interpretations of the various overlapping and somewhat conflicting provisions of the NMATA, the International Union's Constitution, and Local 327's Bylaws, and the impact of those inconsistent interpretations upon the questions presented in this case.

After fully reviewing the extensive and somewhat convoluted record in this case, the Court is of the opinion that genuine issues of material fact exist regarding the appropriate interpretation and interplay among the various provisions of the parties' collective bargaining agreement, the International Union's Constitution, and Local 327's Bylaws, all of which make summary judgment resolution of the *Smith* Plaintiff's § 185 claims against Auto Convoy and Local 327 completely inappropriate. Both parties have submitted extensive and conflicting materials which arguably support their contradictory interpretations of these various and admittedly unclear provisions, many of which are based purely upon the relevant party's historical and somewhat subjective explanation of the how these provisions had been implemented in the past. Clearly, without further

proof this Court cannot ultimately resolve the question of whether Auto Convoy and Local 327 are liable to the *Smith* Plaintiffs for breach of the NMATA, the International Union's Constitution, or Local 327's Bylaws when the parties themselves vehemently dispute the proper historical interpretation of all of these documents, as well as the appropriate means by which to apply them to this case. As such, the Plaintiffs' Motion for Summary Judgment on its claims against Auto Convoy and Local 327 under the LMRA, Defendant Auto Convoy's Motion for Summary Judgment dismissal of the *Smith* Plaintiffs' LMRA claim, and Defendant Local 327's Motion for Summary Judgment dismissal of the *Smith* Plaintiffs' LMRA claim are hereby DENIED.

### B. The *Smith* Plaintiffs' Claim against Local 327 under the LMRDA

■ Next, the *Smith* Plaintiffs claim that Local 327 violated the LMRDA, 29 U.S.C. § 411(a). The Plaintiffs' LMRDA claim is based upon their assertion that, by implementing the 1988 rider without first requiring membership ratification, Local 327 denied them equal voting rights which were protected and guaranteed by the International Union's Constitution. The LMRDA, 29 U.S.C. § 411(a), provides as follows:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Local 327 has moved to dismiss the *Smith* Plaintiffs' claim under the LMRDA, arguing that, since none of the local unions affected by the 1988 rider conducted a ratification vote, the fact that the members of Local 327 did not get to ratify the rider did not result in any differential or discriminatory application of the members' privileges or voting rights. Absent evidence of discriminatory application of voting rights among otherwise similarly situated union members, Local 327 contends that it cannot be liable under the LMRDA.

■ In response, the *Smith* Plaintiffs contend that the LMRDA is implicated not only when there is a discriminatory application of the right to vote or exercise privileges among similarly situated union members, but also when all union members are summarily denied voting rights or privileges which are otherwise guaranteed and protected by a union's constitution or bylaws. This Court agrees with the Plaintiffs' contention that a LMRDA violation occurs not only when voting rights and privileges are dispensed discriminatorily, but also when, although guaranteed by a union's constitution, they are summarily denied to the entire membership. *See Christopher v. Safeway Stores, Inc.,* 644 F.2d 467, 470 (5th Cir.1981).

Despite this acknowledgement, however, this Court is nonetheless of the opinion that the *Smith* Plaintiffs' LMRDA claim against Local 327 is inappropriate for summary judgment resolution. In order to determine if the Local Union's failure to conduct a ratification vote resulted in a violation of the LMRDA, this Court must ultimately resolve the same disputed issues regarding the proper interpretation of the ratification voting rights, if any, accorded the union members under the International Union's Constitution, Local 327's Bylaws, and the NMATA. As previously explained, both parties vehemently dispute the scope and nature of the voting rights accorded under these inherently conflicting documents, and both rely upon the differing opinions of various individuals in support of their particular interpretation. As such, the *Smith* Plaintiffs' and Local 327's Cross–Motions for Summary Judgment on the LMRDA claim are hereby DENIED.

### II. *Colson v. Allied Systems, Ltd.,* No. 3–89–0760

On October 4, 1989, the Plaintiffs in this second action, Don Colson and Ronald Gene Smith, filed a Complaint against Defendants Allied Systems, Ltd. ("Allied Systems") and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT") alleging violations against both Defendants of Section 101 of the

LMRDA, 29 U.S.C. § 411(a), and Section 301 of the LMRA, 29 U.S.C. § 185. This second dispute arose primarily as a result of the 1989 consolidation of Auto Convoy and Motor Convoy into one company known as Allied Systems. This corporate consolidation had the effect of eliminating Auto Convoy and Motor Convoy as separate entities, and as separate signatory employers under the NMATA. The Defendants likewise contend that the consolidation of these two companies resulted necessarily in the elimination of the Auto Convoy rider which is the subject of the *Smith* litigation.

The proposed consolidation of Auto Convoy and Motor Convoy was announced on August 4, 1989. At the request of Allied Systems, a meeting was held in New Orleans on August 21, 1989 between it and all of the local unions representing Auto Convoy and Motor Convoy employees. The purpose of this meeting was to discuss the consolidation and its intended effect upon those employees. Following this meeting, Allied Systems submitted the question of seniority rights of former Auto Convoy and Motor Convoy employees to the National Joint Arbitration Committee pursuant to Article 5, Section 8 of the NMATA. That section provides:

> The Employers and the Union acknowledge that questions involving the accrual, interpretation or application of seniority rights may arise which require different treatment. It is understood that the Employers, the Union and the National or Area Joint Arbitration Committees may mutually agree to such disposition of questions of seniority which, in their judgment, is appropriate under the circumstances. The National and Area Joint Arbitration Committees shall have the authority to determine the establishment and application of seniority in all situations presented to them and the seniority decisions of the Joint Arbitration Committees shall be final and binding on the Employer, the Union, and the employees.

A special hearing was conducted by the National Joint Arbitration Committee on September 13, 1989 to discuss the proposed operational consolidation of Auto Convoy and Motor Convoy, and to resolve seniority issues which would arise in the context of that consolidation. On September 14, 1989, the National Joint Arbitration Committee approved the operational consolidation of Auto Convoy and Motor Convoy into Allied Systems as well as the necessarily elimination of the Auto Convoy rider. The Committee required Allied Systems to conduct a final bid among all former Auto Convoy drivers in order that those drivers might designate the Auto Convoy terminal in which they wished to be domiciled. Although it retained jurisdiction over the transaction for several months to ensure that no undue hardship resulted, the Committee ultimately approved all aspects of the operational consolidation of these two companies.

In this second action, the Plaintiffs allege that Allied Systems and the IBT violated the LMRDA and the LMRA by approving the operational consolidation of Auto Convoy and Motor Convoy into Allied Systems, thereby eliminating the Auto Convoy rider and its attendant benefits. The Plaintiffs contend that the IBT and Allied Systems conspired to deny them their equal voting rights as guaranteed under the LMRDA when they agreed to the consolidation and the elimination of the rider without prior membership ratification. The Plaintiffs additionally contend that Allied Systems violated the NMATA, and the IBT violated its duty of fair representation when they approved the consolidation and the elimination of the rider without prior membership ratification.

The *Colson* Plaintiffs have asserted four claims against the Defendants, all of which are the subject of the parties' Cross–Motions for Summary Judgment: (1) the Plaintiffs' claim against Allied Systems under the LMRA; (2) the Plaintiffs' claim against the IBT under the LMRA; (3) the Plaintiffs' claim against Allied Systems under the LMRDA; and (4) the Plaintiffs' claim against the IBT under the LMRDA. This Court will now proceed to address each of these claims, as well as each parties' respective arguments pertaining thereto.

### A. The *Colson* Plaintiffs' claim against Allied Systems, Ltd., under the LMRDA

A review of the pleadings in this case indicates that both parties agree that the

*Colson* Plaintiffs' LMRDA claim against the employer, Allied Systems, should be dismissed for the same reasons which supported this Court's previous decision to dismiss the *Smith* Plaintiffs' LMRDA claim against the employer in that case, Auto Convoy. (Docket Entry No. 173, p. 11, n. 8). As such, this Court hereby GRANTS that part of Allied Systems' Motion for Summary Judgment which requests dismissal of the *Colson* Plaintiffs' claim against it under the LMRDA.

### B. The *Colson* Plaintiffs' claim against the IBT under the LMRDA

The *Colson* Plaintiffs' LMRDA claim against the IBT challenges the IBT's failure to insist upon membership ratification of the National Committee's decision to eliminate the Auto Convoy rider which resulted from its approval of the operational consolidation of Auto Convoy and Motor Convoy into Allied Systems. The IBT has moved for summary judgment dismissal of the *Colson* Plaintiffs' LMRDA claim. In support of its Motion, the IBT contends that, although Article XII, Section 2(a) of its Constitution requires membership ratification of mid-term modifications to riders, the situation presented by the operational consolidation of Auto Convoy and Motor Convoy into Allied Systems did not result in a "mid-term modification" of the Auto Convoy rider, but its elimination altogether as a result of the employer's demise. The IBT contends that its Constitution has never been interpreted to require membership ratification of a decision to eliminate a company's rider when that elimination resulted from the fact that the company simply ceased to exist. As such, the IBT asserts that it cannot be held liable under the LMRDA for breach of its Constitution.

In response, the *Colson* Plaintiffs contend that, as a result of its merger with Motor Convoy into Allied Systems, Auto Convoy did not cease to exist, but rather was simply "reorganized." As such, the *Colson* Plaintiffs contend that, under the IBT Constitution, they had the constitutionally protected right to ratify any proposed changes to the Auto Convoy rider, including a proposed modification which would work to eliminate the rider altogether. Since the IBT approved the op-

erational consolidation of Auto Convoy and Motor Convoy, with its attendant elimination of the Auto Convoy rider, without insisting upon membership ratification as required by its Constitution, it breached its members' equal voting rights, and thereby violated the LMRDA.

As previously mentioned, in ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

After fully reviewing the record in this case, this Court is of the opinion that the *Colson* Plaintiffs' LMRDA claim against the IBT raises the same inherent conflicting and disputed questions of fact which are raised in the *Smith* litigation regarding the proper scope, interpretation, and application of the rights accorded union members under the NMATA, and the IBT's Constitution. In order to determine whether the IBT's failure to conduct a ratification vote for the operational consolidation, and the attendant elimination of the Auto Convoy rider, resulted in a violation of the LMRDA, this Court must ultimately resolve the same disputed issues regarding the proper interpretation of the ratification voting rights, if any, accorded the union members under the IBT's Constitution and the NMATA. As in the *Smith* litigation, both parties vehemently dispute the scope and nature of the voting rights accorded members under these somewhat conflicting documents. As such, the *Colson* Plaintiffs' and the IBT's Cross–Motions for Summary Judgment on the LMRDA claim are hereby DENIED.

### C. The *Colson* Plaintiffs' claim against Allied Systems, Ltd., under the LMRA

Next, Allied Systems has moved for summary judgment dismissal of the *Colson* Plain-

tiffs' claim against it under the LMRA, 29 U.S.C. § 185. As previously mentioned, a claim under the LMRA requires allegations of a breach of the collective bargaining agreement or the union's constitution or by-laws. In this action, the *Colson* Plaintiffs' contend that, under the Article I, Section 3 of the NMATA, Allied Systems was Auto Convoy's "successor," and was, therefore, bound to comply with the Auto Convoy rider in place at the time it because Auto Convoy's successor. Allied Systems allegedly breached the NMATA, and accordingly violated the LMRA, when it repudiated the Auto Convoy rider as a result of the operational consolidation.

In support of its Motion for Summary Judgment dismissal of the *Colson*'s Plaintiffs LMRA claim, Allied Systems asserts that, by submitting the operational consolidation issue to the National Joint Arbitration Committee for approval, it complied with all of its contractual obligations under the NMATA. Since Article 5, Section 8 of the NMATA specifically states that the Joint Arbitration Committee's decision regarding seniority rights is binding upon the employer, the union and the employee, Allied Systems asserts that the Committee's approval of the operational consolidation of Auto Convoy and Motor Convoy, and the elimination of the Auto Convoy rider, cannot now be challenged under the LMRA. Ultimately, Allied Systems contends that, by submitting the question of operational consolidation and the elimination of the rider to the National Committee as required by the NMATA, it complied with its contractual obligations, and cannot be held to have breached the parties' contract. Since breach of the parties' contract is an essential element of any claim against Allied Systems under the LMRA, Allied Systems asserts that the *Colson* Plaintiffs' LMRA claim against it fails as a matter of law, and should be dismissed.

■ Once again, this Court is of the opinion that genuine issues of material fact exist which render summary judgment disposal of the *Colson* Plaintiffs' LMRA claim against Allied Systems wholly inappropriate at this juncture. First, the initial question of whether Allied Systems is the "successor" of Auto Convoy as that term is defined in the NMATA is hotly disputed. Secondly, even if Allied Systems is held to be Auto Convoy's "successor," the question of whether its compliance with the NMATA's requirement that it submit seniority questions to the National Committee for approval insulates it from liability for arguably violating the Plaintiffs' ratification rights is likewise in dispute. Finally, the resolution of both of these questions requires a determination regarding the proper interpretation of the apparently conflicting provisions of the NMATA—a factual issue in support of which both parties have submitted literally volumes of conflicting evidence. As such, the *Colson* Plaintiffs' and Allied Systems' Motions for Summary Judgment on the LMRA issue are hereby DENIED.

**D. The *Colson* Plaintiffs' claim against the IBT under the LMRA**

Finally, both parties have moved for summary judgment on the *Colson* Plaintiffs' final claim against the IBT under the LMRA for breach of its duty of fair representation. In support of its Motion for Summary Judgment, the IBT asserts that it cannot be held liable for breach of the duty of fair representation because it did not owe the Plaintiffs such a duty. The IBT contends that, since Local 327 was the Plaintiffs' exclusive bargaining representative, it was the only entity which owed the Plaintiffs a duty of fair representation. Even if it is found to owe the Plaintiffs a duty of fair representation, the IBT asserts that it did not breach that duty. The IBT argues that it cannot be held liable for breaching its duty of fair representation by merely complying with the orders of the National Committee regarding the operational consolidation of Auto Convoy and Motor Convoy into Allied Systems and the elimination of the rider as a result thereof. Since the National Committee's approval of the consolidation was not within the IBT's control, its compliance with that decision cannot be held to violate its duty of fair representation.

In response, the *Colson* Plaintiffs contend that the IBT did owe them a duty of fair representation since, pursuant to the NMA-

TA, all of the Local Unions had ceded their individual negotiating authority to the IBT so that it could negotiate on behalf of all of the Local Unions. In addition, the Plaintiffs contend that the IBT breached its duty when it acquiesced in the National Committee's approval of the operational consolidation and the elimination of the rider. Specifically, the Plaintiffs' describe their claim against the IBT as follows:

The DFR theory against the IBT is that it agreed with an employer to implement changes to a collective bargaining agreement without membership ratification, in violation of longstanding constitutional ratification requirements and knowing that members opposed these changes. The IBT intentionally violated its members' constitutional ratification rights for the purpose of implementing an agreement that it knew its members had rejected.

(Docket Entry No. 173, p. 19).

██ Once again, after fully reviewing the record in this case, this Court is of the opinion that disputed questions of material fact exist which render summary judgment disposition of this claim inappropriate. Whether the IBT violated its members' constitutional rights by agreeing to the operational consolidation of Auto Convoy and Motor Convoy, and the elimination of the Auto Convoy rider thereby, requires a factual determination of the proper interpretation, scope and application of various provisions of the IBT's Constitution and the NMATA. As with most of the remaining claims, both parties vehemently dispute the proper interpretation of these various provisions, as well as their application to the allegedly violative conduct at issue in this case. As such, the *Colson* Plaintiffs' and the IBT's Motion for Summary Judgment on the LMRA claim is hereby DENIED.

For the foregoing reasons, Defendant Auto Convoy Co.'s Motion for Summary Judgment is hereby DENIED, Defendant Allied Systems, Ltd.'s Motion for Summary Judgment is hereby GRANTED in part and DENIED in part, Defendants Local No. 327 and the IBT's Motions for Summary Judgment are hereby DENIED, and Plaintiffs' Motion for Summary Judgment and for permission to file Depositions and Answers to Interrogatories is hereby DENIED.